UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HEITH PRITCHETT AND AMY PRITCHETT,
Parents and Next Friends of K.P.                                              PLAINTIFFS

VS.                                                    CAUSE NO. 3:21-cv-00817-KHJ-MTP

GREAT ESCAPES PELAHATCHIE, LP
d/b/a JELLYSTONE PARK YOGI ON THE
LAKE, GREAT ESCAPES PELAHATCHIE
MANAGEMENT, L.P, LEISURE SYSTEMS, INC
THE JENKINS ORGANIZATION, INC., TJO 10X10
MANAGEMENT, L.P., RICKY JENKINS, and JOHN DOES 1
THRU 10                                                                      DEFENDANTS

<u>AMENDED COMPLAINT</u>

COME NOW the Parents and Next Friends of K.P., Heith and Amy Pritchett ("Plaintiffs")

and for cause of action files this their Amended Complaint against the Defendants, Great Escapes

Pelahatchie, LP d/b/a Jellystone Park Yogi on the Lake Pelahatchie, Great Escapes Pelahatchie

Management, L.P., Ricky Jenkins, Leisure Systems, Inc., The Jenkins Organization, Inc., TJO

10x10 Management, L.P., and John Does 1 thru 10 ("Defendants"), showing unto this Court the

following, to-wit:

**PARTIES**

1.

The Plaintiffs, Heith and Amy Pritchett are adult resident citizens of Washington County,

Mississippi.  K.P. is a minor resident citizen of Washington County, Mississippi and the daughter

of Heith and Amy Pritchett (collectively "Plaintiff").

2.

Defendant Great Escapes Pelahatchie, LP (GEP), is a limited partnership organized and existing under the laws of the State of Mississippi. In the ordinary course of its business, and at all times relevant to this action, GEP owned and operated, in conjunction with the other defendants, Jellystone Park Yogi on the Lake Pelahatchie ("Yogi on the Lake"), including all of its recreational water facilities and pools. On information and belief, GEP has one general partner, Great Escapes Pelahatchie Management, LLC (GEPM), a limited liability company organized and existing under the laws of the State of Mississippi, with its principal place of business at 2539 S. Gessner Road, Ste. 13, Houston, Texas 77063. On information and belief, GEPM's sole manager is Ricky L. Jenkins, who is a resident of Texas. Therefore, GEPM is a citizen of the state of Texas. Finally, as set forth at paragraph 9 of this First Amended Complaint, GEP is merely a trade name utilized by Defendants The Jenkins Organization, TJO 10 X 10 Management, and Ricky Jenkins individually for the management and operation of the Yogi on the Lake which, in fact, is owned, operated, managed, and controlled by these Defendants.

3.

Great Escapes Pelahatchie Management, L.P., is a limited liability company organized and existing under the laws of the State of Mississippi, with its principal place of business at 2539 S. Gessner Road, Ste. 13, Houston, Texas 77063. On information and belief, GEPM's sole manager is Ricky L. Jenkins, who is a resident of Texas. Therefore, GEPM is a citizen of the state of Texas. In the ordinary course of its business, and at all times relevant to this action, GEPM was the owner and manager of GEP and, along with the other defendants, participated in the operation and management of Yogi on the Lake. Finally, as set forth at paragraph 9 of this First Amended Complaint, GEPM is merely a trade name utilized by Defendants, The Jenkins

Organization, TJO 10 X 10 Management, and Ricky Jenkins individually for the management and operation of the Yogi on the Lake, which, in fact, is owned, operated, managed, and controlled by these Defendants.

4.

Defendant Leisure Systems, Inc., (hereinafter, "LSI") is a corporation organized, existing, in good standing and having its principal of business in Milford, Ohio. LSI is, therefore, a citizen of the State of Ohio. LSI is the exclusive franchisor of Jellystone Yogi franchise locations nationally. On or about May 5, 2019, "LSI" sold, conveyed, and/or granted the Jellystone Yogi on the Lake franchise from the previous franchisee (Yogi on the Lake, LLC) to GEP, the company that Defendant The Jenkins Organization, Inc., established for purposes of this acquisition. Therefore, LSI conducts business in the State of Mississippi. As part of the sale of the Jellystone Yogi on the Lake franchise, Defendants LSI and GEP entered into a contract (i.e., a "franchise agreement") that delineates the rights and responsibilities of both LSI and GEP in the day-to-day management and operation of Yogi on the Lake, including specifically but not exclusively the management and operation of the water features. At all times relevant to this complaint, LSI held itself out as the entity with whom the public conducted business related to the Yogi on the Lake.

5.

Defendant The Jenkins Organization, Inc., (hereinafter "TJO"), is a business incorporated in the State of Texas with its principal place of business at 2539 S. Gessner Road, Ste. 13, Houston, Texas 77063. Therefore, TJO is a citizen of the State of Texas. TJO is a self-described "fully integrated real estate company specializing in the self-storage and RV park industries with expertise in the areas of acquisition, development, ownership, management, and disposition. Based in Houston, Texas, the award-winning company was launched in 1989 by Ricky L. Jenkins, sole owner of TJO. Celebrating its 30th anniversary, The Jenkins Organization has over $750 million of commercial real estate assets under management, including $500 million in owned assets." https://www.jenkinsorg.com. TJO's website, under the link "rv-resorts," further states that, since February 2019, it has acquired at least 12 different RV resorts throughout the United States under its trade name Great Escapes RV Resorts. www.jenkinsorg.com/rv-resorts. On information and belief, the Jellystone Yogi on the Lake franchise is one of the 12 RV resorts acquired by TJO through business entities, like GEP and GEPM, that TJO established for this purpose. In fact, Defendants GEP and GEPM are merely trade names owned and utilized by Defendants TJO, TJO 10 X 10 Management, and Ricky Jenkins individually for the ownership, management, operation, and control of Yogi on the Lake. The TJO website, again, states as follows under the link "rv-resorts": "The Jenkins Organization is actively acquiring and

developing RV resorts throughout the United States under its trade name Great Escapes RV

Resorts." Therefore, at all times relevant, TJO owned and operated Yogi on the Lake.

6.

Defendant TJO 10 X 10 Management, L.P., (hereinafter, "TJO 10X10") is a corporation

organized, existing and in good standing and having its principal place of business at 2539 S.

Gessner Road, Ste. 13, Houston, Texas 77063. TJO 10x10 is, therefore, a citizen of the State of

Texas. On information and belief, under a management agreement with Defendant GEP, and in

conjunction with the other defendants, TJO 10 X 10 participates in the day-to-day management

and operation of Yogi on the Lake.

7.

Defendant Ricky Jenkins is an individual residing in Harris County, Texas. Ricky

Jenkins is, therefore, a citizen of the state of Texas.

8.

At all times relevant, Defendants GEP and GEPM were alter egos of Defendants TJO,

TJO 10 X 10, and Ricky Jenkins individually. Among other things, on information and belief,

these defendants all maintain the same principal place of business located at 2539 S. Gessner

Road, Ste. 13, Houston, Texas 77063; they share corporate employees; and acting either jointly

or individually, they conceived and implemented various improvements at Yogi on the Lake

after the May 2019 franchise acquisition from Defendant LSI. These improvements, on

Page –5–

information and belief, and according to a June 4, 2019 posting on a website controlled and maintained by these defendants titled "The Jenkins Organization Has Acquired the Jellystone Park Location in Pelahatchie, MS," included a remodel of the park's swimming pool and other alterations and improvements to the park's various water features, which were the source of, and instrumentality by which, the Plaintiffs' injuries occurred. Further, although the employees who work at the park are formally employees of either GEP or GEPM, on information and belief, the deficient policies, practices, and procedures for management of recreational water quality were developed, implemented, and overseen by TJO, TJO 10 X 10, and/or Ricky Jenkins individually. Finally, on information and belief, the various previously described improvements were funded by Defendants TJO, TJO 10 X 10, and/or Ricky Jenkins individually. TJO, TJO 10 X 10, and/or Ricky Jenkins individually utilized Defendants GEP and GEPM as a mere shell, and as an instrumentality or conduit for a single venture—i.e., the operation of Yogi on the Lake and failed to maintain an arm's length relationship among these related entities.

9.

Although Plaintiffs allege that the named Defendants may be the only Defendants responsible in whole or in part to Plaintiffs for all alleged injuries, Plaintiffs also bring this action against John Does 1 through 10, said Defendants being other individuals, partnerships, corporations, limited liability companies or like entities, who, through their actions, may be

liable to Plaintiffs in contributing to the injuries sustained by Plaintiffs and their minor children as set forth herein.

JURISDICTION AND VENUE

10.

Plaintiffs' cause of action arose and accrued in Rankin County, Mississippi. Further, each of the Defendants, by their participation in the development, management, and operation of the Jellystone Park Yogi on the Lake Pelahatchie, has certain minimum with the State of Mississippi that make them amenable to this Court's jurisdiction.

11.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 exclusive of interests and costs, and this is an action by individual plaintiffs who are citizens of Mississippi against defendants that are citizens of Texas (GEP, GEPM, TJO, TJO 10 X 10, and Ricky Jenkins) and Ohio (LSI).

12.

Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim asserted here occurred in this judicial district, and because the defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of this action

Page –7–

## GENERAL ALLEGATIONS

### 13.

The Mississippi State Department of Health (MSDH) identified several cases of shiga-toxin producing E. coli (STEC) infections associated with use of the water features at Yogi on the Lake, including specifically but not exclusively the swimming pool and splashpad in late July and August 2021.

### 14.

Escherichia coli are the name of a common family of bacteria, most members of which do not cause human disease. E. coli O157 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans. In the years since E. coli O157:H7 was first identified as a cause of gastrointestinal illness, this bacterium has established a reputation as a significant public health hazard.

### 15.

E. coli O157 lives in the intestines of cattle and other ruminants. E. coli O157 is also notable among pathogenic bacteria for its extremely low infectious dose—i.e., the number of bacteria necessary to induce infection in a human being.

### 16.

The most severe cases of the E. coli O157 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most

vulnerable. After a susceptible individual ingests E. coli O157, the bacteria attach to the inside surface of the large intestine and initiate an inflammatory reaction of the intestine. What ultimately results in the painful bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

17.

The median incubation period (time from ingestion to the onset of symptoms) of E. coli O157 is 3 to 4 days, with a typical range of 1 to 5 days, although longer incubation periods have been demonstrated.

18.

About 10% of individuals with E.coli 0157 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening complication. The essence of the syndrome is described by its three central features: destruction of red blood cells, destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

19.

There is no known therapy to halt the progression of HUS. The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible. HUS is a frightening illness that even in the best American medical facilities has a mortality rate of about

5%. The majority of HUS patients require transfusion of blood products and develop

complications common to the critically ill.

**THE PLAINTIFFS' E. COLI O157:H7/HUS ILLNESSES AND INJURIES**

20.

At the time of the incident giving rise to this complaint, K.P. was two years old. She and her

family visited Yogi at the Lake on July 31, 2021, paying an entrance fee. During the visit,

Plaintiffs and K.P. spent time in the various water features, including splashpad and swimming

pool.

21.

Onset of K.P.'s E. coli illness occurred on or about August 4, 2021, with diarrhea and other

gastrointestinal symptoms. The symptoms evolved over the course of the next several days,

resulting in significant pain and discomfort.

32.

Plaintiffs first sought medical attention for K.P. on or about August 8, 2021. By this time, K.P.

had begun to suffer from bloody diarrhea, in addition to other symptoms. The pediatrician

elected to transfer K.P. to Batson Children's Hospital in Jackson, Mississippi.

23.

At Batson Children's Hospital, K.P. continued to suffer from significant pain as a result of her

gastrointestinal symptoms.

24.

A stool sample was obtained for culture, which ultimately confirmed that K.P. was suffering from an E. coli O157:H7 infection. Genetic analysis of the isolate from this stool sample ultimately confirmed that K.P. had acquired her E. coli O157:H7 infection at Yogi on the Lake.

25.

Lab tests at Batson Children's Hospital showed that K.P. was, in addition to the painful symptoms, developing hemolytic uremic syndrome (HUS). Lab tests showed acute kidney failure, fluid overload, hemolytic anemia, and thrombocytopenia.

26.

 On or about August 10, 2021, K.P. underwent placement of a central line and peritoneal dialysis catheter. During induction of general anesthesia for this procedure, K.P. was intubated. K.P.'s physicians began her on dialysis.

27.

Dialysis continued daily for approximately 12 days, during which time K.P. became anuric and exhibited other markers of severe disease.

28.

Dialysis was held on August 21, 2021, due to increasing urine production. The dialysis catheter was removed on August 21, 2021.

29.

The acute kidney injury that K.P. suffered as a result of her HUS illness has caused permanent damage to the glomeruli in K.P.'s kidneys. Although it is impossible to ascertain the full extent of damage to her kidneys, as a result of her injuries she is at substantial risk of developing a spectrum of kidney-related disorders over the course of her lifetime, including endstage kidney failure requiring transplantation for survival.

**CAUSES OF ACTION**

**Count I-General Negligence**

30.

Plaintiffs hereby incorporate all above paragraphs by this reference as if each paragraph was set forth in its entirety.

31.

Defendants GEP, GEPM, LSI, TJO, TJO 10 X 10, and Ricky Jenkins jointly owned, controlled, and/or operated Jellystone Park, located at 143 Campground Rd., Pelahatchie, MS 39145, including specifically but not exclusively the recreational water features at the park. Thus, the property causing damage was, in whole or part, in the custody and control of Defendants.

32.

Defendant LSI, TJO, TJO 10 X 10, and/or Ricky Jenkins individually maintained a right to control, and exerted that control over the methods, means, and instrumentalities utilized for the water features at Yogi on the Lake including but not limited to the selection and/or approval of the equipment, machinery, and chemicals used by Yogi on the Lake. Therefore, along with the other defendants, LSI actively possessed and controlled the park's recreational water features.

33.

Additionally, defendant LSI, as the exclusive owner of the rights to the Jellystone Park Camp Resorts franchise, at all times relevant to this complaint, held itself out as the owner and operator of the Yogi on the Lake location to the public. Therefore, defendant LSI is the apparent owner and operator of the Yogi on the Lake.

34.

Plaintiffs and their families were at all times invitees of Defendants and conducted themselves as was expected and encouraged by Defendants, including use of the recreational water facilities.

35.

E. coli O157 is a harmful, potentially lethal pathogen when ingested by humans. Therefore, levels of E.coli O157 in the recreational water high enough to allow for bacterial transmission of E.coli O157 via recreational water at Jellystone Park was an unreasonably dangerous condition on the property that created an unreasonable risk of harm to Plaintiffs.

36.

Bacterial transmission of disease, including the transmission of E. coli through recreational water, is a well-known danger in the industry of recreational water facilities. Through appropriate monitoring of its facilities' water quality, Defendants knew or should have known that the chlorine concentration of the recreational water used in the recreational water features was insufficient to effectively neutralize E. coli O157 bacteria in the water such that it did not pose a risk to patrons, including Plaintiffs.

37.

Defendants unreasonably failed to exercise reasonable care to protect patrons, including Plaintiffs, from the known danger of E. coli transmission via its recreational water used in the water features in the following ways:

a. Failure to ensure that aquatic facility employees were properly trained to appropriately manage the microbial quality of the recreational water in the pool and other recreational water facilities;

b. Failure to ensure that aquatic facility employees were properly trained in proper pool operation and maintenance, including chemical monitoring, usage, recording, maintenance, and fecal accident response procedures in compliance with the applicable regulations;

c. Failure to maintain adequate records and documentation including, but not limited to, daily pool logs, ORP logs, water chemistry logs, temperature logs, test results of regular bacteriological water analysis from an independent laboratory, chemical use logs, controller

print-outs, routine and preventative maintenance logs, and/or clean-up procedures, which

industry standards dictate be maintained in the ordinary course of business;

d. Failure to use appropriate systems for cleaning, maintaining, operating, monitoring, and

inspecting its pools and their related filtration, circulation, and piping system components; and e.

Failure to design and/or construct its aquatic facility's pools to ensure proper water circulation,

filtration and input/output, and other standards outline in the applicable regulations.

38.

The measures delineated above, had they been properly implemented, would have prevented

injury to patrons, including Plaintiffs.

39.

Defendant LSI, as the franchising company of Jellystone Park franchises, actively benefitted

from the licensing of its Jellystone Park brand to franchisees such as GEP/GEPM and TJO but

failed to approve and/or take reasonable measures to require and monitor these franchisees for

compliance with appropriate standards and protocols relating to operation and maintenance of

recreational water features. Such measures could have prevented injuries to pool patrons,

including Plaintiffs.

40.

Defendants' unreasonable failure to exercise reasonable care in the ways delineated above,

among others, caused the recreational water in its recreational water features to become

contaminated by E. coli O157 on the date that Plaintiffs suffered injury, and also allowed the contamination to persist, creating the risk of severe health consequences to patrons.

41.

Plaintiffs' E. coli O157 infection, injuries, and damages were directly and proximately caused by bacterial transmission in Defendants' facility's recreational water features. Therefore, Defendants are liable to Plaintiffs injuries.

**Count II- Premises Liability**

42.

Plaintiffs hereby incorporate all above paragraphs by this reference as if each paragraph was set forth in its entirety.

43.

Plaintiffs and their families were at all times invitees of Defendants on the premises for their mutual benefit. Plaintiffs and their families were at all times conducting themselves as was expected and encouraged by Defendants, including use of Defendants' recreational water features.

44.

Defendants jointly owned, controlled, and/or operated Jellystone Park, located at 143 Campground Rd., Pelahatchie, MS 39145, at all times relevant, including controlling and operating every aspect of the recreational water features.

Page –16–

45.

Specifically, GEPM had possession and control of Jellystone Park as it is the sole partner of GEP.

46.

In addition to TJO, TJO 10 X 10, and Ricky Jenkins being the de facto owners and operators of Jellystone Park via their purchase of the park in 2019 through alter ego corporations GEP and GEPM, they possessed and controlled the recreational water facilities at the park through renovations and improvements that, on information and belief, they funded and implemented.

47.

Based on information and belief, LSI's franchise agreement included an oversight function by which LSI would monitor and dictate the condition and safety of the water features including the splashpad and swimming pool.

48.

Thus, the property causing damage was in the possession and control of all Defendants.

49.

Defendants had a duty to exercise reasonable care to keep the premises reasonably safe and to warn of hidden dangers or peril not in plain and open view.

50.

The presence of viable E. coli O157 bacteria in the recreational water at the park was an unreasonably dangerous condition on the property that created an unreasonable risk of harm to persons, including Plaintiffs on the premises.

51.

Bacterial transmission of disease, including the transmission of E. coli through recreational water, is a well-known danger in the industry of recreational water facilities. Through appropriate monitoring of its facilities' water quality, Defendants knew or should have known that the chlorine concentration of its splashpad and swimming pool water was insufficient to effectively neutralize E. coli O157 bacteria in the water such that it did not pose a risk to patrons, including Plaintiffs.

52.

Defendants unreasonably failed to exercise reasonable care to protect patrons, including Plaintiffs, from the known danger of E. coli transmission via its splashpad and swimming pool water in the following ways:

a. Failure to properly train its aquatic facility employees, seasonal and permanent, on proper pool operation and maintenance, including chemical monitoring, usage, recording, maintenance, and fecal accident response procedures in compliance with the applicable regulations;

b. Failure to maintain adequate records and documentation including, but not limited to, daily pool logs, ORP logs, water chemistry logs, temperature logs, test results of regular bacteriological water analysis from an independent laboratory, chemical use logs, controller print-outs, routine and preventative maintenance logs, and/or clean-up procedures, which industry standards dictate be maintained in the ordinary course of business;

c. Failure to use appropriate systems for cleaning, maintaining, operating, monitoring, and inspecting its pools and their related filtration, circulation, and piping system components; and

d. Failure to design and/or construct its aquatic facility's pools to ensure proper water circulation, filtration and input/output, and other standards outlined in the applicable regulations.

53.

The measures delineated above, had they been properly implemented, would have prevented injury to pool patrons, including Plaintiffs.

54.

Defendants' unreasonable failure to exercise reasonable care in the ways delineated above, among others, caused the recreational water in its swimming pool and splashpad to become contaminated by E. coli O157 on the date of Plaintiffs' injury, thereby creating a hazardous condition on the premises. Defendants allowed the contamination to persist, creating the risk of severe health consequences to patrons.

55.

Plaintiffs' E. coli O157 infections, injuries, and damages were directly and proximately caused by bacterial transmission via Defendants' facility's recreational water— a hazardous condition caused by Defendants' negligence. Therefore, Defendants are liable to Plaintiffs for their injuries.

## DAMAGES

56.

Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendants, in an amount which shall be fully proven at the time of trial. These damages include, but are not limited to: Past, present and future medical expenses; Physical injury; Permanent injuries; Past, present and future pain and suffering, emotional distress, mental anguish; Economic damages; Out-of-pocket expenses; Loss of enjoyment of life; Punitive damages; All other damages of every kind to the Plaintiffs to which they are entitled by law; All injuries and damages shown by the evidence introduced in this case, damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; past medical and medical-related expenses; future medical and medical-related expenses; travel and travel-related expenses, both past and future; lost wages; emotional distress, past and future; disability; pharmaceutical expenses, past and future; and all other ordinary,

incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

a. Compensation for all general, special, incidental, and consequential damages suffered by the Plaintiffs as a result of the Defendants' conduct;

b. Statutory prejudgment interest;

c. Reasonable attorneys' fees and costs, to the fullest extent allow by law; and

d. All such additional and further relief as this Court deems just and equitable.

## JURY DEMAND

A jury is demanded for the trial of this action

This the 28th day of July, 2022.

Respectfully submitted,

JONES LAW, P.A.

/s/ Baskin Jones, MS Bar #103589
Baskin L. Jones

*Attorney for Plaintiffs Heith Pritchett, Amy Pritchett, & K.P.*

OF COUNSEL:
BASKIN L. JONES, ESQ. (MSB #103589)
JONES LAW P.A.
3417 North State Street
Jackson, MS 39216
P: 601-272-2406
www.injuredinmississippi.com

JOHN DANIELS
DYER, DYER, JONES & DANIELS
Post Office Box 560
Greenville, Mississippi 38701
Tel:  (662) 378-2626
Fax: (662) 378-2672
Email: jhdiii@suddenlinkmail.com

*Attorneys for Plaintiff*